SK:DEL
F. #2019R01017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE (IMEI 356147091773613), AND APPLE IPHONE (IMEI 355691077195060) CURRENTLY LOCATED IN THE EASTERN DISTRICT OF NEW YORK | APPLICATION FOR A SEARCH WARRANT FOR ELECTRONIC DEVICES<br><br>Case No. 20-MJ-179 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, KEVAL PATEL, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—the cellular telephones—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and am currently serving in the New York City Airport Border Enforcement Security Task Force. I am a "federal law enforcement officer" within the meaning of Federal Rule Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been employed as a Special Agent with HSI since 2018. Prior to becoming a Special Agent, I was a police officer for the Washington, DC Metro Transit Police

for approximately six years, where I investigated felony and misdemeanor cases. I have made numerous arrests for violations of state and local narcotics laws. During my tenure with HSI, I have participated in numerous investigations into narcotics trafficking offenses and have experience utilizing a variety of investigative techniques, including, but not limited to, interviews of witnesses and suspects, physical surveillance, execution of search warrants and undercover buys. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

3.      The property to be searched is (1) an Apple iPhone (model A1586), IMEI 356147091773613, that was seized incident to the arrest of DENNIS HARRIS (hereinafter the "Harris Device"), and (2) an Apple iPhone (model A1688), IMEI 355691077195060, that was seized incident to the arrest of RASHEEM RICHARDSON (hereinafter the "Richardson Device") (collectively, the "Devices"). Both the Harris Device and the Richardson Device are currently in the HSI Evidence Room at John F. Kennedy Airport which is in confines of the Eastern District of New York.

4.      The applied-for warrants would authorize the forensic examination of the Harris Device and the Richardson Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

5.      On January 28, 2020, HARRIS and RICHARDSON were arrested for committing violations of Title 21, United States Code, Sections 841 and 846 (narcotics trafficking and conspiracy) pursuant to a Complaint and Affidavit in support of an application for arrest warrants

2

signed by the Honorable Ramon E. Reyes, Jr. See 20-MJ-65. That affidavit is attached hereto as Exhibit A and incorporated herein.

6.      On February 12, 2020, HARRIS and RICHARDSON were indicted for conspiracy to distribute and possession with intent to distribute heroin and fentanyl between February 2019 and October 2019 as well as distribution and possession with intent to distribute fentanyl. See 20-CR-69 (ENV).

7.      The Devices are currently in the lawful possession HSI after they were seized incident to the arrest of HARRIS and RICHARDSON. The Devices are currently in storage at HSI JFK Evidence Room located in the confines of the Eastern District of New York. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of HSI.

8.      There is probable cause to believe HARRIS and RICHARDSON used the Devices to communicate during the narcotics distribution conspiracy.

9.      Subscriber records obtained from Sprint list HARRIS as the subscriber for the assigned call number (347) 522-7004. HARRIS also provided this number to law enforcement agents during a prior arrest. Furthermore, Sprint records indicate that the assigned call number (347)522-7004 is associated with the IMEI number 356147091773613, which is listed on the HARRIS DEVICE seized during his arrest.

10.      Verizon records list another individual as the subscriber for the assigned call number (718)309-1454; however, law enforcement databases associate RICHARDSON with assigned call number (718)309-1454. RICHARDSON provided this number to his parole officer and RICHARDSON provided that number to law enforcement agents during his arrest. In

addition, public databases associate the IMEI number for the Richardson Device

(355691077195060) with the Apple iPhone model that was seized upon RICHARDSON's arrest.

RICHARDSON also identified the phone as his phone upon his arrest.

11.    Toll records reveal that HARRIS (347-522-7004) and RICHARDSON (718-309-

1454) were in frequent contact by telephone during the conspiracy. The charged conspiracy

extends from February to October 2019. As further describer in Exhibit A, an undercover law

enforcement officer completed 16 narcotics transactions with HARRIS alone or HARRIS and

RICHARDSON from May to October 2019. During approximately the same period, HARRIS

and RICHARDSON called each other about 1335 times, with RICHARDSON receiving 808

phone calls from HARRIS and placing 529 calls to HARRIS—an average of more than five calls

per day in that time period. In addition, the call volume increased on the days of the undercover

buys.

12.    Furthermore, based on my training and experience, narcotics traffickers

commonly use cellphones, blackberries, PDAs, and other personal handheld electronic devices,

to communicate with, among others, their customers, their suppliers, and other criminal

associates and to store phone numbers, text messages, emails, photographs, physical and email

addresses, and other information that constitutes evidence of their narcotics trafficking activities.

## TECHNICAL TERMS

13.    Based on my training and experience, I use the following technical terms to

convey the following meanings:

      a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular

          telephone) is a handheld wireless device used for voice and data communication

          through radio signals. These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication

6

devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

14.     Based on my training, experience, and research, I know that the Devices have capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the devices. This information can sometimes be recovered with forensics tools.

16.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

7

the Devices were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.  Forensic evidence on devices can also indicate who has used or controlled the devices. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.  A person with appropriate familiarity with how electronic devices works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how devices were used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17. <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

18. <u>Manner of execution</u>. Because this warrant seeks only permission to examine Devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

19.     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the Devices described in Attachment A to seek the items

described in Attachment B.

Respectfully submitted,

KEVAL PATEL
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on February 21, 2020:

THE HON. 'S  | Scanlon
UNITED ST
EASTERN L

10

## ATTACHMENT A

1.      The property to be searched is:

   a.  an Apple iPhone (model A1586), IMEI 356147091773613, that was seized
       incident to the arrest of DENNIS HARRIS (hereinafter the "Harris Device"), and

   b.  an Apple iPhone (model A1688), IMEI 355691077195060, that was seized
       incident to the arrest of RASHEEM RICHARDSON (hereinafter the "Richardson
       Device") (collectively, the "Devices"). Both the Harris Device and the
       Richardson Device are currently in the HSI Evidence Room at John F. Kennedy
       Airport within the confines of the Eastern District of New York.

   This warrant authorizes the forensic examination of the Devices for the purpose of
identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Devices described in Attachment A that relate to violations of Title 21, United States Code, Sections 841 and 846 (narcotics trafficking and conspiracy) and involve DENNIS HARRIS and RASHEEM RICHARDSON from February 1, 2019 to January 29, 2020, including:

   a. lists of customers and related identifying information;

   b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d. any information concerning the identity or location of, and communications with, suspects and co-conspirators;

   e. log information of telephone numbers or email addresses of incoming and outgoing calls, messages, and/or other communications;

   f. other caller-identification information, including names, phone numbers, and addresses;

   g. address books or contact lists;

   h. opened and unopened voice mail messages;

   i. any and all SMS (simple message service) messages, data messages, text messages, MMS (Multimedia Messaging Service), and any other messages, and

any attachments to those messages, such as digital photographs and videos, and any associated information, such as the phone number from which the text message was sent stored on the Devices;

j.  all files containing text, photos, or videos stored on the Devices;

k.  calendar, note, password, dictionary, or other scheduling information;

l.  all payments from digital wallet; and

m.  any Global Positioning Satellite (GPS) entries, Internet Protocol connections, and location entries to include Cell Tower and WiFi entries.

n.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

o.  Any items or records needed to access the data stored on any seized or copied cellular device, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys or similar information; and

p.  Any items or records that may facilitate a forensic examination of the cellular devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied cellular devices.

# Exhibit A

**TO: Clerk's Office**
**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

**APPLICATION FOR LEAVE**
**TO FILE DOCUMENT UNDER SEAL**

*********************************
IN THE MATTER OF ARREST WARRANTS
FOR DENNIS HARRIS AND RASHEEM
RICHARDSON AND FOR A
SEARCH WARRANT FOR THE PREMISES
AT 3004 LEWMAY ROAD, NO. 2, FAR
ROCKAWAY, NEW YORK

20-MJ-65
Docket Number

*********************************

SUBMITTED BY: Plaintiff ___ Defendant ___ DOJ ✓
Name: ___
Firm Name: Devon Lash
Address: U.S. Attorney's Office, E.D.N.Y.
271 Cadman Plaza East, Brooklyn New York, 11201
Phone Number: (718)254-6014
E-Mail Address: devon.lash@usdoj.gov

INDICATE UPON THE PUBLIC DOCKET SHEET: YES ___ NO ✓
If yes, state description of document to be entered on docket sheet:

_____

_____

**MANDATORY CERTIFICATION OF SERVICE:**
**A.)** ___ A copy of this application either has been or will be promptly served upon all parties to this action, **B.)** ___ Service is excused by 31 U.S.C. 3730(b), or by
the following other statute or regulation: ___ ; or **C.)** ✓ This is a criminal document submitted, and flight public safety, or security are significant concerns.
(Check one)

January 17, 2020
DATE

DEVON LASH
SIGNATURE



**A) If pursuant to a prior Court Order:**
Docket Number of Case in Which Entered: ___
Judge/Magistrate Judge: ___
Date Entered: ___

_____

**B) If a new application**, the statute, regulation, or other legal basis that
authorizes filing under seal

Ongoing Criminal Investigation

**ORDERED SEALED AND PLACED IN THE CLERK'S OFFICE,**
**AND MAY NOT BE UNSEALED UNLESS ORDERED BY**
**THE COURT.**

DATED: Brooklyn
January 17, 2020

NEW YORK

~~U.S. DISTRICT JUDGE~~/U.S. MAGISTRATE JUDGE

RECEIVED IN CLERK'S OFFICE January 17, 2020
DATE

AB:DEL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ARREST WARRANT FOR DENNIS HARRIS AND RASHEEM RICHARDSON AND FOR A SEARCH WARRANT FOR THE PREMISES KNOWN AND DESCRIBED AS 3004 LEWMAY ROAD, NO. 2, FAR ROCKAWAY, NEW YORK, AND ALL LOCKED AND CLOSED CONTAINERS AND CELLULAR DEVICES FOUND THEREIN | **TO BE FILED UNDER SEAL**<br><br>COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR ARREST WARRANTS AND SEARCH WARRANT<br><br>(T. 21, U.S.C. §§ 841, 846)<br><br>20-MJ-65 |

## AFFIDAVIT IN SUPPORT OF ARREST WARRANTS AND AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, KEVAL PATEL, being duly sworn, deposes and states that he is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

In or about and between May 2019, and October 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DENNIS HARRIS and RASHEEM RICHARDSON, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute one or more controlled substances, which offense involved (a) a substance containing heroin, a Schedule I controlled substance, and (b) a substance containing fentanyl, a Schedule II controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1).

(Title 21, United States Code, Sections 846 and 841(a)(1); Title 18, United States Code, Section 3551 et seq.)

1

## I. Introduction

### A. Affiant

1.      I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and am currently serving in the New York City Airport Border Enforcement Security Task Force.  As such, I have been deputized as a "federal law enforcement officer" within the meaning of Federal Rule Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been employed as a Special Agent with HSI since 2018.  Prior to becoming a Special Agent, I was a Police Officer for the Washington, DC Metro Transit Police for approximately six years, where I investigated multiple felony and misdemeanor cases.  I have made numerous arrests for violations of state and local narcotics laws.  During my tenure with HSI, I have participated in numerous investigations into narcotics trafficking offenses and have experience utilizing a variety of investigative techniques, including, but not limited to, interviews of witnesses and suspects, physical surveillance, execution of search warrants and undercover buys.

2.      I make this Affidavit in support of an application for arrest warrants for DENNIS HARRIS and RASHEEM RICHARDSON for violations of Title 21, United States Code, Sections 841 and 846, and for an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known and described as 3004 Lewmay Road, No. 2,[1] Far Rockaway, New York, and all locked and closed containers and cellular

---

[1] Based my review of law enforcement databases, the units in this building are sometimes referred by floor (i.e., second floor or third floor) or simply by number (i.e., No. 2 or No. 3).

devices found therein (the "RICHARDSON PREMISES"), as described in Attachment A, for the items and information described in Attachment B.

3.  This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**B.  Premises to be Searched: The Richardson Premises**

4.  The RICHARDSON PREMISES is No. 2, on the second floor, at the street address, 3004 LEWMAY ROAD, FAR ROCKAWAY, NY 11691. 3004 LEWMAY ROAD is a three-unit multi-family residence in Far Rockaway, NY, located near the corner of Beach 30th Street and Lewmay Road. The building is tan with brown trim. The entrance to 3004 Lewmay Road has the address "3004" on the door. Photographs of the outside of the building are included in Attachment A.1. This photograph clearly displays three different utility meters and three different satellite dishes at 3004 Lewmay Road.

5.  The SUBJECT DEVICES are any cellphones, blackberries, PDAs, or other personal handheld electronic devices found within the RICHARDSON PREMISES.

**C.  The Subject Offenses**

6.  For the reasons detailed below, I submit that there is probable cause to believe that DENNIS HARRIS and RASHEEM RICHARDSON committed violations of Title 21, United States Code, Sections 841 and 846 (narcotics trafficking and conspiracy) (the "SUBJECT

3

OFFENSES"), and that the RICHARDSON PREMISES contains evidence, fruits, and instrumentalities of such violations.

7.       On July 23, 2019, the Honorable Ramon E. Reyes, Jr. issued a search warrant in Case No. 19-MC-1871, for GPS and cell-site data for the phone numbers (347) 522-7004 and (718) 309-1454 associated with HARRIS and RICHARDSON, respectively.  On September 9, 2019, the Honorable Lois Bloom issued a search warrant in this case for another thirty days of GPS and cell-site data for the phone numbers (347) 522-7004 and (718) 309-1454 associated with HARRIS and RICHARDSON, respectively.

8.       On August 13, 2019, the Honorable Steven M. Gold issued a search warrant in Case No. 19-MC-2078 authorizing the installation and monitoring of tracking devices on: (1) a 2010 grey Mercedes Benz M55, bearing license plate number HRK5901 and VIN 4JGBB7CB2AA541034, which is registered to Harris ("HARRIS's vehicle") and (2) a 2003 grey Ford Expedition, bearing license plate number HZY7772 and VIN 1FMPU16W53LC00309, which, upon information and belief, belongs to RICHARDSON ("RICHARDSON's vehicle"). On September 9, 2019, the Honorable Lois Bloom signed an extension of that search warrant in authorizing the installation and monitoring of tracking devices for another thirty days.  On October 23, 2019, the Honorable Sanket J. Bulsara signed the third extension of that search warrant.

## II.  Probable Cause

### A.  Probable Cause Regarding the Commission of the Subject Offenses By Harris

9.       Following February 17, 2019, non-fatal overdose of a 57 year-old male ("Victim") in Astoria, New York, HSI and the New York City Police Department ("NYPD") Queens North Overdose Team began investigating a New York City-based Heroin and Fentanyl trafficking organization.

4

10.     The investigation has identified DENNIS HARRIS as a suspected narcotics distributor. HARRIS was linked to the overdose of the Victim through phone records from the Victim's cellphone.

11.     Beginning in or about May 2019 and continuing through in or about October 2019, an undercover NYPD police officer (the "UC") met with HARRIS on approximately 16 occasions in Queens, New York, and made controlled purchases of heroin in exchange for an agreed-upon amount of cash. Each transaction was video and audio-recorded by the NYPD using a covert recording device.

12.     Each transactions followed a similar pattern: before each buy, the UC communicated with HARRIS on a particular cellphone number. The UC and HARRIS arranged to meet at an agreed-upon location, and agreed upon the particular amount of drugs that the UC would purchase and the cost of those narcotics. After communicating on the phone, the UC and HARRIS met, and the UC purchased heroin from HARRIS. After each transaction, the UC passed the purchased drugs to other law enforcement officers, who sent the drugs to a forensic lab for testing. Lab tests confirmed the narcotics contained heroin, fentanyl or a combination of heroin and fentanyl.

**B. Probable Cause Regarding the Commission of the Subject Offenses By Richardson**

13.     The investigation has also identified RASHEEM RICHARDSON as a suspected narcotics distributor and HARRIS's co-conspirator.

14.     On two occasions, HARRIS told the UC that RICHARDSON was involved in HARRIS's sale of narcotics.

15.     On July 19, 2019, law enforcement agents were surveilling 1383 McBride Street, Far Rockaway, New York, which law enforcement agents confirmed through physical surveillance and law enforcement databases, is HARRIS's residence. The agents observed

5

RICHARDSON arrive and enter HARRIS's residence. Shortly thereafter, HARRIS sold narcotics to the UC. During the sale, HARRIS stated, "my man came to bring the shit." No other individual entered HARRIS's residence after RICHARDSON, and the narcotics transaction took place shortly after RICHARDSON entered. Upon information and belief, HARRIS was referring to RICHARDSON bringing narcotics to HARRIS.

16. On August 20, 2019, the UC and other law enforcements agents observed RICHARDSON driving HARRIS's vehicle. When the UC told Harris he thought he saw someone driving his car, HARRIS replied, "That's my partner." Furthermore, law enforcement agents saw RICHARDSON drive HARRIS's vehicle to the RICHARDSON PREMISES. RICHARDSON entered the RICHARDSON PREMISES, and after approximately 20 minutes, returned to HARRIS's vehicle and drove back to HARRIS's residence. A short time later, HARRIS exited his residence and sold narcotics to the UC.

17. Furthermore, on two other occasions, RICHARDSON was with HARRIS immediately before and after HARRIS sold narcotics to the UC.

18. On October 8, 2019, law enforcement agents observed RICHARDSON enter HARRIS's residence shortly before HARRIS left the home to sell narcotics to the UC inside the UC's car parked directly in front of the residence. Furthermore, law enforcement agents observed HARRIS drive to the RICHARDSON PREMISES, pick up RICHARDSON and return to the HARRIS's residence, where HARRIS sold narcotics to the UC.

19. On October 23, 2019, law enforcement and the UC observed HARRIS and RICHARDSON in HARRIS's vehicle when HARRIS left the vehicle, got in the UC's vehicle parked nearby and sold narcotics to the UC. HARRIS returned to the vehicle where RICHARDSON was waiting.

6

20.     During other undercover buys, the narcotics being sold were not physically located where HARRIS arranged to meet the UC.

21.     On May 16, 2019, HARRIS, who was seated inside his own vehicle, received a phone call in the presence of the UC. The incoming phone number appeared on the dashboard display of HARRIS's vehicle and the UC observed the first six digits of the phone number: "718-309." Those six digits match the first six digits of the phone number associated with RICHARDSON, which is (718) 309-1454. The UC heard HARRIS answer this phone call and ask the caller, "Yeah Baby, Where you at?" HARRIS then left the vehicle and returned minutes later with narcotics to sell to the UC.

22.     On May 31, 2019, prior to HARRIS's transactions with the UC, law enforcement agents observed HARRIS confer with RICHARDSON at a separate location and then deliver the agreed-upon quantity of narcotics to the UC. Based upon my training and experience, the aforementioned conduct is indicative of individuals conspiring together to sell narcotics.

23.     Furthermore, HARRIS and RICHARDSON were in frequent contact by telephone. Between April 23, 2019 and December 9, 2019, approximately 1337 phones calls were placed between RICHARDSON and HARRIS, with RICHARDSON receiving 808 phone calls from HARRIS and placing 529 calls to HARRIS—an average of more than five calls per day in that time period.

## C. Probable Cause to Search and Seize the Richardson Premises

24.     Law enforcement databases shows 3004 Lewmay Road, No. 2, Far Rockaway, New York, is RICHARDSON's address. Law enforcements have observed RICHARDSON enter or exit the RICHARDSON PREMISES on several occasions. Law enforcement agents have also observed RICHARDSON's vehicle (a 2003 Grey Ford Expedition bearing License Plate No. HZY7772 and VIN No. 1FMPU16W53LC00309) parked outside 3004 Lewmay Road.

7

An inquiry into the license plate number for this vehicle revealed citations, which were traced to RICHARDSON.

25.     Upon information and belief, heroin and fentanyl are being stored at the RICHARDSON PREMISES.

26.     Based on my training, experience, participation in other narcotics investigations, and discussions with other law enforcement officers, I know that drug traffickers commonly use their residence or residences to receive and store narcotics and that their residences often serve as a base of operation for a narcotics trafficking organization.

27.     This appears to be particularly true with respect to RICHARDSON, because shortly before at least three narcotics sales, RICHARDSON or HARRIS went to the RICHARDSON PREMISES before HARRIS met with the UC.

28.     On July 19, 2019, law enforcements agents were surveilling RICHARDSON at the RICHARDSON PREMISES.  Agents saw RICHARDSON leave the RICHARDSON PREMISES in his vehicle and arrive at HARRIS's residence.  RICHARDSON exited the vehicle and walked inside HARRIS's residence.  Minutes later, HARRIS exited the residence and sold narcotics to the UC.

29.     On August 20, 2019, law enforcement agents saw RICHARDSON drive HARRIS's vehicle to the RICHARDSON PREMISES.  RICHARDSON entered the RICHARDSON PREMISES, and after approximately 20 minutes, returned to HARRIS's vehicle and drove back to HARRIS's residence.  A short time later, HARRIS exited his residence and sold narcotics to the UC.

8

30.     On October 8, 2019, law enforcement agents observed HARRIS drive to the

RICHARDSON PREMISES, pick up RICHARDSON and return to the HARRIS's residence,

where HARRIS sold narcotics to the UC.

31.     In addition to these observations, HARRIS stated to the UC, in substance and in

part, on May 31, 2019, "You don't shit where you eat. You don't keep the money and the drugs

in the same spot." Considering that HARRIS accepts the money from the UC for narcotics

transactions, and RICHARDSON and the RICHARDSON PREMISES have been otherwise

involved in several narcotics transaction, there is probable cause to the narcotics are being stored

in the RICHARDSON PREMISES.

32.     Furthermore, there is no reason to believe this has changed since the last

undercover buy on October 23, 2019. Based on my training and experience, I know that

traffickers who use the same location for months at a time do not commonly change these

locations unless they are discovered.[2]

## D. Fruits, Evidence and Instrumentalities Inside the Richardson Premises and Any Closed Containers and Cellular Devices Found Therein

33.     As a result, the following items, among other things, which are frequently stored

by narcotics traffickers in the course of their narcotics trafficking activities and which constitute

---

[2] Nor is the probable cause for this search stale. The Second Circuit has held in investigations of ongoing narcotics operations, "intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." United States v. Ortiz, 143 F.3d 728, 732–33 (2d Cir. 1998) (quoting Rivera v. United States, 928 F.2d 592, 602 (2d Cir. 1991)). Indeed, "narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." United States v. Faltine, No. 13-CR-315 KAM, 2014 WL 4370811, at *18 (E.D.N.Y. Sept. 2, 2014) (quoting United States v. Feola, 651 F. Supp. 1068, 1090 (S.D.N.Y.1987)). "Courts in this Circuit have found probable cause based on information that is more than several months old." Id.

9

evidence of narcotics trafficking, are likely to be found in the residences and stash houses of individuals who are engaged in narcotics trafficking:

      a.     Narcotics traffickers frequently find it necessary to store, outside the normal banking system, large sums of cash received from the sale and distribution of controlled substances.

      b.     Narcotics traffickers frequently maintain large amounts of cash and other valuable assets such as precious metals or gems on hand to maintain and finance their ongoing business.

      c.     Narcotics traffickers frequently keep firearms and ammunitions in their residences to protect narcotics and the proceeds of narcotics trafficking, and to protect themselves from rival dealers.

      d.     Narcotics traffickers frequently maintain books, records, receipts, notes, ledgers, airline tickets, money orders and other documents relating to the transportation, ordering, sale and distribution of controlled substances and maintain monetary instruments and other assets. Such documents and other items are generally maintained where the narcotics traffickers have ready access to them, such as at their residences or other locations where they regularly conduct their narcotics business.

      e.     It is common for significant narcotics traffickers to hide in secure locations within residences for ready access and conceal from law enforcement the following: proceeds of drug sales; records of drug transactions; weapons; ammunition; caches of drugs and other contraband; other items containing or reflecting evidence of the processing or counting of drug proceeds, including but not limited to money counting machines, large amounts of currency, financial instruments, keys for safe deposit boxes, precious metals, jewelry, and other

items of value and/or proceeds of drug transactions; and evidence of financial transactions relating to obtaining, transferring, hiding, or spending large sums of money made from controlled substance trafficking activities.

f.      When narcotics traffickers amass proceeds from the sale of controlled substances, they commonly attempt to legitimize these profits. Narcotics traffickers use various methods to achieve this goal, and evidence of these efforts includes but is not limited to records from foreign and domestic banks and their attendant services, credit card records, records from the purchase of securities and other financial instruments, cashier's checks, money drafts, letters of credit, records from brokerage houses, real estate records, and documents and records relating to shell corporations and business fronts.

g.      Narcotics traffickers commonly maintain, in books and papers, names, addresses, telephone numbers and/or paging numbers for their criminal associates. They also often maintain telephone billing records that evidence the placing of large numbers of calls each month, consistent with narcotics dealing. They also maintain identification documents, including driver's licenses, passports and other travel documents, and social security cards.

h.      Narcotics traffickers commonly have photographs of themselves, their associates, their property and their narcotics in their possession or in their residences or other locations where they regularly conduct their narcotics business.

i.      Narcotics traffickers usually keep paraphernalia for packaging, cutting, weighing and distributing controlled substances. These paraphernalia include but are not limited to scales, plastic and glassine bags and materials used in cooking powder cocaine into crack, such as baking soda, and other utensils and materials for packaging.

j.     Narcotics traffickers commonly use cellphones, blackberries, PDAs, and other personal handheld electronic devices, to communicate with, among others, their customers, their suppliers, and other criminal associates and to store phone numbers, text messages, emails, photographs, physical and email addresses, and other information that constitutes evidence of their narcotics trafficking activities.

34.     Based on my training, experience, participation in other investigations concerning narcotics trafficking, and extensive discussions with other law enforcement agents, I know that individuals who traffic narcotics routinely secrete and store books, records, documents, currency and other items of the sort described in the preceding paragraph and in Attachment B, which is incorporated herein by reference, in secure locations like cabinets, storage lockers, safety deposit boxes, suitcases, briefcases, safes, key-lock strong boxes, and other types of locked or closed containers in an effort to prevent the discovery or theft of said items. I therefore seek authorization to open any closed items and containers or to seize any such closed items and containers so that they may be opened if tools or other implements are required.

35.     Accordingly, and based on all of the above, I submit that there is probable cause to believe that the RICHARDSON PREMISES and any closed and/or locked containers found therein will contain evidence, fruits and instrumentalities of the SUBJECT OFFENSES, and will also contain SUBJECT DEVICES that will (and will, in and of themselves, constitute) further evidence, fruits and instrumentalities of the SUBJECT OFFENSES.

## III. Procedures For Searching ESI

### A. Execution of Warrant for ESI

36.     Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review." Consistent with Rule 41, this

12

application requests authorization to seize any cellphones, blackberries, PDAs, or other personal handheld electronic devices and transport them to an appropriate law enforcement facility for review. This is typically necessary for a number of reasons:

- First, the volume of data on cellphones is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because cellphone data is particularly vulnerable to inadvertent or intentional modification or destruction, cellphones are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of hardware and software in use today that it can be impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying data.

- Fourth, many factors can complicate and prolong recovery of data from a cellphone, including the increasingly common use of passwords, encryption, or other features or configurations designed to protect or conceal data on the cellphone, which often take considerable time and resources for forensic personnel to detect and resolve.

### B. Review of ESI

37.     Following seizure of any cellphones, blackberries, PDAs, or other personal handheld electronic devices and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained therein for information responsive to the warrant.

38.     In conducting this review, law enforcement personnel may use various techniques to determine which files or other ESI contain evidence or fruits of the SUBJECT OFFENSES. Such techniques may include, for example:

13

   a. surveying directories or folders and the individual files they contain
      (analogous to looking at the outside of a file cabinet for the markings it
      contains and opening a drawer believed to contain pertinent files);

   b. conducting a file-by-file review by "opening" or reading the first few "pages"
      of such files to determine their precise contents (analogous to performing a
      cursory examination of each document in a file cabinet to determine its
      relevance);

   c. "scanning" storage areas to discover and possibly recover recently deleted
      data or deliberately hidden files;

   d. performing electronic keyword searches through all electronic storage areas to
      determine the existence and location of data potentially related to the subject
      matter of the investigation[3]; and

   e. reviewing metadata, system information, configuration files, registry data and
      any other information reflecting how, when and by whom the device was
      used.

39.     Law enforcement personnel will make reasonable efforts to restrict their search to
data falling within the categories of evidence specified in the warrant. Depending on the
circumstances, however, law enforcement personnel may need to conduct a complete review of
all the ESI from seized devices to evaluate its contents and to locate all data responsive to the
warrant.

   **C. Return of ESI**

40.     If the government determines that the electronic devices are no longer necessary
to retrieve and preserve the data, and the devices themselves are not subject to seizure pursuant
to Federal Rule of Criminal Procedure 41(c), the government will return these items, upon
request. Data that is encrypted or unreadable will not be returned unless law enforcement

___

[3] Keyword searches alone are typically inadequate to detect all relevant data. For one
thing, keyword searches work only for text data, yet many types of files, such as images and
videos, do not store data as searchable text. Moreover, even as to text data, there may be
information properly subject to seizure but that is not captured by a keyword search because the
information does not contain the keywords being searched.

14

personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the SUBJECT OFFENSES.

## IV. Conclusion

41. Based on the foregoing, I respectfully request the court to issue warrants to arrest DENNIS HARRIS and RASHEEM RICHARDSON for violations of Title 21, United States Code, Sections 841 and 846, and a warrant to search the RICHARDSON PREMISES (as specified in Attachment A) to seize the items and information specified in Attachment B to this affidavit and to the Search and Seizure Warrant.

WHEREFORE, your deponent respectfully requests that the defendants DENNIS HARRIS and RASHEEM RICHARDSON be dealt with according to law.

I further request that the Court order that all papers in support of this Application, including the Affidavit, the Arrest Warrants, and Search Warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation by allowing the target to flee before he can be arrested and the search of the RICHARDSON PREMISES can be conducted.

KEVAL PATEL
Special Agent
Homeland Security Investigations

Sworn to before me on this
_17_ th day of January, 2020

HONORABLE RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

16

**Attachment A – The Richardson Premises**

The RICHARDSON PREMISES to be searched is: 3004 LEWMAY ROAD, NO. 2, FAR

ROCKAWAY, NY 11691. The RICHARDSON PREMISES is No. 2, on the second floor. 3004

LEWMAY ROAD is a three-unit multi-family residence in Far Rockaway, NY, located near the

corner of Beach 30th Street and Lewmay Road. The building is tan with brown trim. The entrance

to 3004 Lewmay Road has the address "3004" on the door. Photographs of the outside of the

building are included here. This photograph clearly displays three different utility meters and three

different satellite dishes at 3004 Lewmay Road.



1

**Attachment B – Items to be Seized**

**Evidence, Fruits, and Instrumentalities of the Subject Offenses**

The items to be seized from the RICHARDSON PREMISES include the following evidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 (narcotics trafficking and conspiracy) (the "SUBJECT OFFENSES"):

1.    Narcotics, including but not limited to substances and mixtures containing detectable amounts of heroin, a Schedule I controlled substance, and/or fentanyl, a Schedule II controlled substance, or their analogs;

2.    Firearms and ammunitions, including but not limited to handguns and automatic weapons;

3.    Monies, financial records, ledgers, papers, photographs, telephones, adding machines and adding machine tapes, calculators, cassettes and tapes, compact discs, identification documents, travel documents, and other property, documents and records and closed containers inside of which the above may be kept that constitute evidence of the commission of, or are designed or intended as a means of the violation of, or are contraband or the fruits of, the federal narcotics laws;

4.    Paraphernalia used in the manufacture, packaging, cutting, and weighing of illicit narcotics in preparation for trafficking;

5.    Bank statements, bank checks, cash receipts, money transfer records and receipts, money remittance instructions, customer information and records, sales records, ledgers showing cash and checks received, contracts, fax records, correspondence, including but not limited to correspondence with others regarding the transmission of money, printed e-mails, letters, faxes, and telephone logs or messages that constitute evidence of narcotic trafficking or the receipt or transmittal of narcotics proceeds;

2

6.　Indicia of occupancy, residency, and/or ownership of the premises to be searched; and

7.　Safes, key-lock strong boxes, suitcases, locked cabinets, and other types of locked or closed containers used to secrete and store currency, narcotics paraphernalia, books, records, documents, financial instruments, and other items of the sort described in subparagraphs (1) through (7) above. Law enforcement officers executing this Warrant are specifically authorized to open any such locked safes or containers including, where necessary, by using force.

8.　All cellular telephones, BlackBerries, smart phones, or other personal handheld electronic devices. In lieu of seizing any such cellular devices, this warrant also authorizes the copying of such devices or media for later review.

The items to be seized also include:

9.　Any items or records needed to access the data stored on any seized or copied cellular device, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys or similar information;

10.　Any items or records that may facilitate a forensic examination of the cellular devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied cellular devices; and

11.　Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied cellular device.

Following seizure of any cellular device and/or the creation of forensic image copies, law enforcement personnel (which may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to

3

review the ESI contained therein for information responsive to the warrant. In addition to ESI that falls within the categories set forth above in this attachment, responsive information includes the following:

12.     Evidence concerning the identity or location of the owner(s) or user(s) of the SUBJECT DEVICES;

13.     Evidence concerning the identity or location of, and communications with, suspects and co-conspirators;

14.     Log information of telephone numbers or email addresses of incoming and outgoing calls, messages, and/or other communications;

15.     Other caller-identification information, including names, phone numbers, and addresses;

16.     Address books or contact lists;

17.     Opened and unopened voice mail messages;

18.     Any and all SMS (simple message service) messages, data messages, text messages, MMS (Multimedia Messaging Service), and any other messages, and any attachments to those messages, such as digital photographs and videos, and any associated information, such as the phone number from which the text message was sent stored on the SUBJECT DEVICES;

19.     The contents of social media applications, including photographs, postings, and private messages;

20.     All files containing text, photos, or videos stored on the SUBJECT DEVICES;

21.     Calendar, note, password, dictionary, or other scheduling information;

22.     Any Global Positioning Satellite (GPS) entries, Internet Protocol connections, and location entries to include Cell Tower and WiFi entries; and

4

23.    Any internet or browser entries or history.

Law enforcement personnel will make reasonable efforts to search only for files, documents or other electronically stored information within the categories identified in this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices if necessary to evaluate its contents and to locate all data responsive to the warrant.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>THE PREMISES KNOWN AND DESCRIBED AS 3004 LEWMAY ROAD,<br>NO. 2, FAR ROCKAWAY, NEW YORK, AND ALL LOCKED AND<br>CLOSED CONTAINERS AND CELLULAR DEVICES FOUND THEREIN | )<br>)<br>)   Case No.   20-MJ-51<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the            Eastern            District of            New York            
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before            January 31, 2020            *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to            the Duty Magistrate Judge            .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ___ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      01/17/2020 10:48 am                          _____
                                                                                        *Judge's Signature*

City and state:      Brooklyn, New York                          Hon. Ramon E. Reyes, Jr.      U.S.M.J.
                                                                                        *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>20-MJ-51 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |

Inventory of the property taken and name of any person(s) seized:

**Certification**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  _____

_____

*Executing officer's signature*

_____

*Printed name and title*

## Attachment A – The Richardson Premises

The RICHARDSON PREMISES to be searched is: 3004 LEWMAY ROAD, NO. 2, FAR ROCKAWAY, NY 11691. The RICHARDSON PREMISES is No. 2, on the second floor. 3004 LEWMAY ROAD is a three-unit multi-family residence in Far Rockaway, NY, located near the corner of Beach 30th Street and Lewmay Road. The building is tan with brown trim. The entrance to 3004 Lewmay Road has the address "3004" on the door. Photographs of the outside of the building are included here. This photograph clearly displays three different utility meters and three different satellite dishes at 3004 Lewmay Road.

 

1

## Attachment B – Items to be Seized

## Evidence, Fruits, and Instrumentalities of the Subject Offenses

The items to be seized from the RICHARDSON PREMISES include the following evidence, fruits, and/or instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 (narcotics trafficking and conspiracy) (the "SUBJECT OFFENSES"):

1.     Narcotics, including but not limited to substances and mixtures containing detectable amounts of heroin, a Schedule I controlled substance, and/or fentanyl, a Schedule II controlled substance, or their analogs;

2.     Firearms and ammunitions, including but not limited to handguns and automatic weapons;

3.     Monies, financial records, ledgers, papers, photographs, telephones, adding machines and adding machine tapes, calculators, cassettes and tapes, compact discs, identification documents, travel documents, and other property, documents and records and closed containers inside of which the above may be kept that constitute evidence of the commission of, or are designed or intended as a means of the violation of, or are contraband or the fruits of, the federal narcotics laws;

4.     Paraphernalia used in the manufacture, packaging, cutting, and weighing of illicit narcotics in preparation for trafficking;

5.     Bank statements, bank checks, cash receipts, money transfer records and receipts, money remittance instructions, customer information and records, sales records, ledgers showing cash and checks received, contracts, fax records, correspondence, including but not limited to correspondence with others regarding the transmission of money, printed e-mails, letters, faxes, and telephone logs or messages that constitute evidence of narcotic trafficking or the receipt or transmittal of narcotics proceeds;

2

6.    Indicia of occupancy, residency, and/or ownership of the premises to be searched; and

7.    Safes, key-lock strong boxes, suitcases, locked cabinets, and other types of locked or closed containers used to secrete and store currency, narcotics paraphernalia, books, records, documents, financial instruments, and other items of the sort described in subparagraphs (1) through (7) above. Law enforcement officers executing this Warrant are specifically authorized to open any such locked safes or containers including, where necessary, by using force.

8.    All cellular telephones, BlackBerries, smart phones, or other personal handheld electronic devices. In lieu of seizing any such cellular devices, this warrant also authorizes the copying of such devices or media for later review.

The items to be seized also include:

9.    Any items or records needed to access the data stored on any seized or copied cellular device, including but not limited to any physical keys, encryption devices, or records of login credentials, passwords, private encryption keys or similar information;

10.    Any items or records that may facilitate a forensic examination of the cellular devices, including any hardware or software manuals or other information concerning the configuration of the seized or copied cellular devices; and

11.    Any evidence concerning the identities or locations of those persons with access to, control over, or ownership of the seized or copied cellular device.

Following seizure of any cellular device and/or the creation of forensic image copies, law enforcement personnel (which may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to

3

review the ESI contained therein for information responsive to the warrant. In addition to ESI that falls within the categories set forth above in this attachment, responsive information includes the following:

12.    Evidence concerning the identity or location of the owner(s) or user(s) of the SUBJECT DEVICES;

13.    Evidence concerning the identity or location of, and communications with, suspects and co-conspirators;

14.    Log information of telephone numbers or email addresses of incoming and outgoing calls, messages, and/or other communications;

15.    Other caller-identification information, including names, phone numbers, and addresses;

16.    Address books or contact lists;

17.    Opened and unopened voice mail messages;

18.    Any and all SMS (simple message service) messages, data messages, text messages, MMS (Multimedia Messaging Service), and any other messages, and any attachments to those messages, such as digital photographs and videos, and any associated information, such as the phone number from which the text message was sent stored on the SUBJECT DEVICES;

19.    The contents of social media applications, including photographs, postings, and private messages;

20.    All files containing text, photos, or videos stored on the SUBJECT DEVICES;

21.    Calendar, note, password, dictionary, or other scheduling information;

22.    Any Global Positioning Satellite (GPS) entries, Internet Protocol connections, and location entries to include Cell Tower and WiFi entries; and

4

23. Any internet or browser entries or history.

Law enforcement personnel will make reasonable efforts to search only for files, documents or other electronically stored information within the categories identified in this Attachment. However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices if necessary to evaluate its contents and to locate all data responsive to the warrant.

5

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

United States of America
)
v.
)
) Case No. 20-MJ-65
DENNIS HARRIS
)
)
)
)

*Defendant*

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     DENNIS HARRIS                                                                                                                     ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☑ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

  Violations of 21 U.S.C Sections 841 and 846 (narcotics trafficking and conspiracy)

Date:      01/17/2020

_____
*Issuing officer's signature*

City and state:      Brooklyn, New York

The Honorable Ramon E. Reyes, Jr.
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| _____ *Arresting officer's signature* |
| _____ *Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

History of violence, weapons, drug use: _____

Known family, friends, and other associates *(name, relation, address, phone number)*: _____

FBI number: _____

Complete description of auto: _____

Investigative agency and address: _____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*: _____

Date of last contact with pretrial services or probation officer *(if applicable)*: _____

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   20-MJ-65 |
| RASHEEM RICHARDSON | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

    **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    RASHEEM RICHARDSON
                                                                                                                                                  ,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment        ☐ Superseding Indictment        ☐ Information        ☐ Superseding Information        ☑ Complaint
☐ Probation Violation Petition        ☐ Supervised Release Violation Petition        ☐ Violation Notice        ☐ Order of the Court

This offense is briefly described as follows:

  Violations of 21 U.S.C Sections 841 and 846 (narcotics trafficking and conspiracy)

Date:      01/17/2020

_____
*Issuing officer's signature*

City and state:      Brooklyn, New York

      The Honorable Ramon E. Reyes, Jr.
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____ |
| _____ *Arresting officer's signature* |
| _____ *Printed name and title* |